*Broun,* for Appellants.

*Barnett and Lindsey,* for Appellees.

---

## SUSAN WILMORE *v.* C. F. LOWERY AND WIFE.

**Pleadings — Grounds in Amended Petition Inconsistent with the Original Petition — Reason for Delay in Filing Amended Petition — Suspicion.**

The appellees claimed only one-fourth of the land in their original petition but subsequently filed an amended petition claiming the whole property, giving as a reason for not claiming all the property in the original petition, that the writing on which they based their claim, set out in the amended petition, was mislaid. *Held,* that the reason is so utterly futile and unsatisfactory, considered in connection with the inconsistent character and extent of the two claims, as to cover the whole transaction with suspicion.

APPEAL FROM FAYETTE CIRCUIT COURT.

February 7, 1867.

OPINION OF THE COURT BY JUDGE PETERS:

In their original petition appellees alleged that Richard Hightower, who was the father of appellant, conveyed, in 1836, a tract of forty-eight acres of land in Jessamine county to her and her three children, of whom appellee, Mrs. Miranda Lowery, is one; that appellant with the consent of appellees sold a part of said tract of land, and invested the proceeds of said sale in a house and lot in the city of Lexington, the title to which appellant procured to be made to herself, promising to secure said property to Mrs. Lowery; that appellees took possession of said house and lot, believing that appellant would carry out and execute her promise; that she had lived with them in the house from the time

they were put in possession until recently, they paying the taxes on the property. But that she had, a short time before the institution of this suit, left their house and departed from the State, having constituted one Drake her agent to sell said property, who was about to sell the same for $2,550, which is much less than its real value; that it cost $2,500 with some furniture thrown in, but that it had increased greatly in value since the purchase. That one-fourth of the money, with which said house and lot were paid for, belonged to Mrs. Lowery as her part of the price for which the land in Jessamine was sold, and was invested in said house and lot with her consent, and that appellant in fraud of her rights procured the deed to be made to her, and on that ground prayed that appellant be enjoined from selling said property, and that she be adjudged to convey one-fourth thereof to Mrs. Lowery. The original petition was filed 18th May, 1865. Appellant filed her answer on the 5th July, 1865, in which she denied that her daughter had any title to or interest in the Jessamine land whatever, and alleged that said forty-eight acres of land were devised to her mother, Mrs. Susan Hightower, by her former husband, Chesley Gates; that at the death of her mother she left four children, three by her first marriage, and appellant, the only child of her second marriage, and said forty-eight acres of land, therefore, descended to her four children subject to the life estate of her father, said Richard Hightower, as tenant by the curtesy, and by his deed referred to, and made part of said petition, he only conveyed his life estate in said land, which was all he had to convey, and did not attempt or intend to convey, any greater estate, which terminated at his death, which had occurred twenty-five years before the institution of this action; that after the death of her father a suit was brought in the Jessamine Circuit Court, for a partition of said land, in which suit it was adjudged that it belonged to the said children of her mother, Mrs. Susan Hightower, in fee simple, and partition was made, and her part was set apart to her, which she subsequently sold, and with a part of the proceeds purchased the house and lot and furniture named in the petition, and exhibits the will of Gates and a copy of the proceedings in the Jessamine Circuit Court for partition, as parts of her answer.

She furthermore alleges that appellee, Charles F. Lowery, was insolvent and unable to provide for his family, which was large and almost in utter destitution; in that situation they were a

heavy tax upon her limited means, and by way of aiding in their support, she, therefore, having sold without consultation with, or the consent of appellees, or any one else, her part of the Jessamine land, she concluded to purchase the property in question in order that by furnishing a home for C. F. Lowery and family she could aid them at less expense than by paying their board, and in making said purchase said C. F. Lowery acted for her, applying the notes which she had taken from the purchaser of the Jessamine land to the payment for the city property, and that he attended to; and had the deed made for said property by her vendor to her. She denies all the material allegations of the petition, prays that appellees may be adjudged to pay her rent for the time they may occupy her property, and to surrender the same to her, and to that end she makes her answer a counterclaim, and for general relief.

On the 6th of July, 1865, appellees filed an amended petition and reply to the counterclaim of appellant, in which it is charged that she resided with said C. F. Lowery for about eight years, getting goods from his store, using his carriage, horses, and servants at her pleasure, and all her physicians' bills were paid by him, he then being in independent circumstances; that the value of her board, merchandise furnished, and money advanced, amounted to $4,878.48, and during the time he had received of her only $748. Subsequently, he became insolvent and had prepared to leave the State for a location at which he could make a support for his family. Appellant (as they allege) feeling the obligation she was under for the valuable favors she had received from him, and being unwilling to part with her only daughter, and her only child then living in Kentucky, on the 21st of July, 1860, executed and delivered to her said daughter a paper filed as part of said amended petition, in which she stated she had bought the house and lot in controversy, and the furniture embraced in a list on the opposite page of said writing, and delivered the possession of the same to her said daughter, in consideration of the love and affection she had for her, and for the further consideration that her husband had abandoned the intention of removing, and binding herself to make to her daughter a deed for said property whenever *she required her* to do so; and that appellees were by said promise and agreement induced to remain in Kentucky, which they would not otherwise have done, and

36

they were utterly surprised when they were informed of appellant's intention to sell the property and turn them out of possession.

The reasons alleged in the amended petition for not setting up and relying on said writing in the original petition are that it was filed in great haste, to prevent the consummation of a great wrong to them, and the paper had been mislaid and they could not lay their hands on it. They resist the appointment of a receiver to take possession of the property, again aver that appellee C. F. Lowery has paid the taxes, and prays for a conveyance of the property to Mrs. Lowery, etc.

Appellant in her answer to the cross-petition denies that she is indebted to C. F. Lowery, or was ever so indebted, for board, use of servants, merchandise, money advanced, or for any or either of them, or on any account whatever; admits that she resided with him for the period named, but avers that her services in his family and attention to his business were reasonably worth her board, and, moreover, that she went there on his invitation to do so; that there never was any contract or agreement made to pay him for board and entertainment, and it never was contemplated by appellees to charge her, and the account made up and then for the first time presented was fabricated for the purpose of supporting a fraudulent claim to her house and lot, and that each and every item of said claim, if ever in existence, are barred by time, and she pleads the Statute of Limitations in bar thereof.

The execution of the paper set up and relied upon as an obligation to convey the Lexington property is fully denied, and every agreement or promise alleged to have been made by her to convey the same — indeed, all the material allegations of this amended petition — are specifically denied, and in her amended answer she states that the house and lot and furniture in question, together with $1,000 loaned to her son living perhaps in Illinois, constitute her whole estate, except some mountain land, which is of little value and yields no income to her.

On final hearing it was adjudged that appellant should convey to Mrs. Miranda Lowery the house and lot described in the petition, with covenant of special warranty, and pay appellees their costs.

It is to be observed that in the original petition only an interest of an undivided one-fourth in the property was claimed, upon the

ground that one-fourth of the money which was paid for it belonged to Mrs. Lowery as the proceeds of her interest in the Jessamine land, but immediately upon the coming in of the answer of appellant with the exhibits, demonstrating beyond all doubt that there was not a pretext even for such a claim, that ground was abandoned wholly, and in an amended petition a claim set up for the whole of the property upon the new and totally different ground that appellant had for love and affection, and in consideration that appellees had declined to remove from the State, and determined to remain with her, executed her bond to convey the property to Mrs. Lowery when required to do so. While the reason assigned in the amended petition for not asserting claim to the whole of the property in the original petition by virtue of this writing is that it was filed in great haste, and the paper containing the agreement was mislaid so that they could not lay their hands on it — a reason so utterly futile and unsatisfactory, considered in connection with the inconsistent character and extent of the two claims as to cover the whole transaction with suspicion.

The writing filed as the obligation of appellant to convey the property is in pencil, as is the list of articles purchased of the vendor of the house and lot on the same paper, while the duplicate list filed by her in the handwriting of C. F. Lowery is written with pen and ink, both bearing the same date, and the two lists must have been made at the same place, and very nearly at the same time — showing that pen and ink were present on the occasion, and that Miss Lowery was mistaken in supposing that these articles were not convenient at the time.

In a letter written by C. F. Lowery to W. B. Page, his brother-in-law, the day before the original petition was filed, he urges *Payne* to use his influence with his mother, who was then at his house, to induce her to revoke the authority she had given Drake to sell the property, because if she sold it and it could be made *to* appear that she had removed to Illinois, her adversaries in a suit which she was prosecuting in the Jessamine Circuit Court would rule her to give security for costs, which she would be unable to do, and the fruits of all his efforts in preparing and prosecuting that suit would be lost, but never intimated in any part of the letter that his wife had any claim to the property whatever.

This property constituted over two-thirds of appellant's whole estate, leaving only $1,000 of available means, the interest of which

would be entirely inadequate to her support at her advanced age, with what of that sum might be left at her death to divide between her son and a grandson, the child of a deceased son, making very great inequality in the distribution of her small estate amongst them who had equal claims upon her bounty.

We deem it unnecessary to enter upon a critical analysis of the witnesses who testified in the case, but remark that their testimony is conflicting and appellees have failed to furnish any satisfactory explanation of the facts heretofore enumerated, and which are inconsistent with the claim of appellees to the property. Our conclusion, therefore, is that appellees have failed to establish their right to any relief.

Wherefore, the judgment is reversed, and the cause is remanded with directions to dismiss the petition of appellees with costs, and that they be adjudged to surrender the possession of the property to appellant on her cross-petition.

*Hunt & Beck,* for Appellant.

*Kinkead & Buckner,* for Appellees.